## W. B. SULLIVAN v. W. L. KIEFFER.

ERROR TO THE COURT OF COMMON PLEAS OF UNION COUNTY.

122 135
38SC 501

Argued May 24, 1888—Decided October 1, 1888.

(*a.*) A testator's will directed the conversion of his estate real and personal into money and disposed of the whole of it in shares, a portion being given to his wife for life with remainder over. The widow, however, refused to take under the will. (*b.*) The executors sold and conveyed the real estate without any condition or charge protective of the principal securing the widow's estate; and, after the death of the widow, the heir at law sued the terre-tenant to recover said principal: *Held,*

1. That the estate accepted by the widow being but her statutory estate which necessarily ceased at her death, her election not to take under the will did not create an intestacy as to the portion bequeathed to her, entitling the plaintiff to recover.

2. That it was of no moment that an intermediate vendor of the land, had in his contract of sale left the principal securing the widow's interest in the hands of his vendee.

3. That the conveyance of the land by the executors passed to the purchaser a title unincumbered except by liability for the widow's estate during her life, and at her death no charge remained upon the land.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 95 January Term 1888, Sup. Ct.; court below, No. 45 March Term 1885, C. P.

Statement of Facts.

On February 27, 1885, an action in assumpsit was brought by William B. Sullivan against William L. Kieffer, to recover from the defendant, as terre-tenant, the principal sum charged on the land as the share of his mother, as the widow of W. B. Sullivan, deceased. The defendant pleaded, non assumpsit, with leave, etc., and the statute of limitations.

At the trial on March 19, 1887, the facts shown were in substance as follows:

William B. Sullivan, the plaintiff's father, died sometime in 1850, seized in fee of a farm in White Deer township, and leaving to survive him a widow Sarah Sullivan, a daughter Adeline, by a former marriage, and two sons by his second wife, W. B. Sullivan, the plaintiff, and Daniel T. Sullivan, who died in his minority, unmarried and without issue.

On September 17, 1850, the will of Mr. Sullivan, dated July 13, 1850, was proved, and letters testamentary thereon issued to the executors therein named. This will, after providing for the payment of the testator's debts and funeral expenses proceeded:

1. I give and bequeath to my daughter, May Adeline, in lieu of a bond of two thousand dollars which I gave to David Marr in her favor, the one half of the residue of my property, real and personal.

2. I give and bequeath the one fourth of my estate to my son William.

3. I give and bequeath the income of the remaining one fourth part of my estate to my beloved wife Sarah during her natural life.

4. I will and bequeath that after the decease of my said wife that the said one fourth part of my estate the income of which was bequeathed to her to go to my said son William and in case of the death of my said daughter or son before she or he attain the age of twenty-one or die without any heir or heirs then her or his portion shall go to the survivor.

5. I will and bequeath that if I should have any heir or heirs hereafter that the said one fourth part of my estate which I bequeath to my son William be equally divided between them and in case of either of their deaths it shall go to the survivor or survivors of them.

6. I do order and direct my executors hereinafter named shall as conveniently may be after my decease sell and dispose of all my personal and real estate to such person or persons and for such price or prices as may be reasonably gotten for the same; and I do hereby authorize my executors to sign, seal, execute and acknowledge all such deed or deeds of conveyance as may be requisite and necessary for granting and assuring the same to the purchaser or purchasers thereof in fee simple, and lastly I hereby constitute and appoint my friends and neighbors Samuel Henderson and Robert Candor to be my executors of this my last will and testament hereby revoking, etc.

It was claimed that the daughter Adeline, before her father's second marriage had received his bond for $2,000, dated November 2, 1849, payable ten years after date, or at his death if it occurred before the end of that period, and that this bond was to be in lieu of her share of his estate. It was paid by the executors after his death, and a credit, claimed therefor, in their account, disallowed on exceptions in the court below, but restored by this court in Candor's App., 27 Pa. 119, so that, as contended by the plaintiff, he was the only person interested in the subject matter of the present suit.

On December 24, 1850, the widow appeared in answer to a citation and declined to accept the provisions of the will in her favor in lieu of dower. Soon after, the executors by a written contract, the date and terms of which did not appear, as it was alleged to be lost, sold the land described in the will for $6,350 to Dr. W. H. Marr, who on January 25, 1851, entered into articles of agreement to sell the same land to Jacob Leiser, for the sum of $6,750, the payments to be made in the following manner: $200 on the article; $1,500 on April 1, 1851, when a deed was to be delivered; $800 on April 1, 1852; $800 on April 1, 1854, "and the balance after deducting the widow's dower (the interest of which is to be paid annually) on or before April 1, 1885," the deferred payments to be secured by bonds and mortgage.

On April 2, 1851, in pursuance of an arrangement made with Dr. Marr, the executors of Mr. Sullivan made a deed directly to Jacob Leiser, the purchaser under the above contract. This deed recited the authority to sell contained in the will of Mr. Sullivan, a consideration paid of $6,350, and it was absolute and without any reservations, conditions, charges or liens whatever, and was duly recorded. Leiser went into possession of the premises and so continued until his death in 1869, when by descent and by conveyance from the other parties in interest, the title became vested in 1872 in his son, William A. Leiser. Mrs. Sullivan, the widow, was paid the interest due to her annually, by Jacob Leiser and William Leiser, until her death on June 11, 1883. On November 8, 1884, William A. Leiser sold the farm to William L. Kieffer, the defendant, who, before the payment of the purchase money, was notified of the claim of the plaintiff and took a bond from his vendor to idemnify him against loss.

The facts stated appearing in the case of the plaintiff, the defendant adduced evidence to show that in their accounts filed in 1851, 1853 and 1855, the executors of Mr. Sullivan had accounted for the full amount of the $6,350, purchase money due to them from Dr. Marr; that the final account showed a balance due the estate, expressly " including widow's dower," ascertained by a subsequent proceeding at $778.72; that Jacob Leiser had paid to Dr. Marr the full amount of $6,750, the purchase money due on his contract, and had lifted all the bonds given by him to Dr. Marr, the bonds being produced in court.

It was contended on part of the defendant that the deed of the executors to Jacob Leiser passed the whole title to the land except as subject to the payment of the annual interest due to the widow, and that the plaintiff had no interest in the principal set apart to secure that interest.   On part of the plaintiff it was contended that there was no merger of the articles of agreement between Dr. Marr and Jacob Leiser in the deed made by the executors subsequently, and that the articles contained an express reservation in favor of the heir of his share in the principal to secure the widow's interest; that the share of the widow passed under the intestate law, and not under the will, and as the executors could sell only subject to her estate, the interest of the heir did not pass by their deed.

The court, BARNETT, P. J., charged the jury that the plaintiff was not entitled to recover, and directed the verdict to be rendered in favor of the defendant.

A verdict having been rendered accordingly and judgment entered thereon, the plaintiff took this writ, assigning the said instructions to the jury as error.

*Mr. A. H. Dill* (with him *Mr. E. M. Beale*), for the plaintiff in error:

This action is brought by the only surviving child, entitled to take, of W. B. Sullivan, the testator named in the History of the Case, to recover from the terre-tenant the principal sum charged on the land of the testator as the share of his widow, in lieu of dower.   If the charge on the land can be shown to exist in favor of the plaintiff, the action is a proper one: Keim v. Taylor, 11 Pa. 171: Pidcock v. Bye, 3 R. 183.

1. It is not denied that there is an express direction to sell, contained in the will, and that it produced, therefore, a constructive conversion; yet it was a conversion not "to all intents," but only for the purposes of the will. There are no words indicating a disposition of his estate other than according to the provisions of the will, and there is no residuary legatee; nor is there any indicated intention that, on the failure of any of its provisions, the will is "to prevail as between the persons on whom the law casts the real and personal property of an intestate." We submit that it is the general rule that "if the proceeds of real estate directed to be sold be disposed of in a certain event which does not happen, the beneficial interest comprised in the contingent gift which thus fails devolves to the heir."

2. In the will before the court, two of the bequests, comprising three fourths of the whole estate, were upon contingencies which did not happen. The bequest to Adeline of one half the proceeds failed, because she took the bond in preference to the bequest. Clearly, taking the whole will together, there was an intestacy as to this part of the estate. And so also, the bequest to the widow was upon a contingency, to wit, her right to accept or refuse, and as she refused the contingency did not happen and there was an intestacy as to the bequest to her. If this be so, there being no residuary legatee, and no one to take except under the intestate laws, then the plaintiff takes his interest in the estate of the widow under the intestate laws and not under the will. And there was no merger of his interest in the widow's estate by the deed of the executors to Jacob Leiser, through whom defendant claims title, as the law made it subject to her estate. The statutory share of the widow was not only a charge in her favor for the annuity but also for the principal sum, for those entitled under the intestate laws: Jarman on Wills, ed. 1850, 214; Dougherty v. Jack, 5 W. 456; Updegrove v. Updegrove, 1 Pa. 136.

*Mr. A. A. Leiser* (with him *Mr. Charles S. Wolfe*), for the defendant in error:

1. The error, as we conceive it, in plaintiff's contention, arises from a misconception of the effect of the widow's election not to take under her husband's will, and of the nature of

her interest or estate in the lands of the testator in consequence of such election, and the plaintiff's rights with respect to such interest or estate. In the first place, as the result of her election not to take, there was no intestacy, but, instead thereof, the widow was remitted to her dower at common law: Hinnershits v. Bernhard, 13 Pa. 518; Paul v. Paul, 36 Pa. 270; Bradfords v. Kents, 43 Pa. 474; Shaffer v. Shaffer, 50 Pa. 394. The position of the plaintiff that after the death of the widow, her dower, by its very definition and nature limited to her life, still remained as a charge upon or as an estate in the land, and that somehow and in someway, not indicated or explained, this plaintiff was entitled to such charge or estate, is wholly at variance with all authority upon the subject.

2. The agreement between Marr and Leiser was merged in the bonds that were taken to secure the purchase money under it; and it was also merged in the deed for the premises, subsequently executed and delivered without any reservation or incumbrance whatever. The rule is that when a verbal or written contract differs from a deed, the latter on principles of reason and policy is to be taken to express the ultimate intention of the parties, unless there be fraud or mistake: Creigh v. Beelin, 1 W. & S. 33; Lighty v. Shorb, 3 P. & W. 447; Jones v. Wood, 16 Pa. 25. In Dougherty v. Jack, 5 W. 456, the party against whom it was held there could be no merger, was one having an interest in the land as land, and the purchaser bought with notice of that interest; not the present case at all.

3. Besides: Under the will the entire estate in the land passed to the executors: Brown's App., 27 Pa. 64; Shippen v. Clapp, 36 Pa. 89; and no interest in the land devised to be sold passed to the plaintiff: Miller v. Meetch, 8 Pa. 425; Allison v. Kurtz, 2 W. 185. Moreover, under the will, the sole interest of the plaintiff was personalty, because, by the direction to sell, the land became personalty and the conversion for all the purposes of the will dated from the death of the testator: McClure's App., 72 Pa. 417; Brolasky v. Gally, 51 Pa. 509; Horner's App., 56 Pa. 408; Dundas's App., 64 Pa. 330; Burr v. Sim, 1 Wh. 263; Parkinson's App., 32 Pa. 458. The plaintiff's interest being in the proceeds of sale as personalty, his sole remedy if he had any claim, was against the execu-

tors : Dundas's App., 64 Pa. 330 ; Miller v. Meetch, 8 Pa. 426 ; Shippen v. Clapp, 29 Pa. 272.

OPINION, MR. CHIEF JUSTICE GORDON :

Allowing the counsel for the plaintiff in error to state their own case, and it is as follows : " This action was brought by the only surviving child, entitled to take, of William B. Sullivan, the testator named in the History of the Case, to recover from the terre-tenant the principal sum charged on the land of the testator as the share of his widow, in lieu of dower." From this statement, read in connection with the will, it is clear that the plaintiff had no case at all, and that the court properly directed a verdict for the defendant.

" I give and bequeath," is the language of the will, " the income of the remaining one fourth of my estate to my beloved wife Sarah, during her natural life." " I will and bequeath that after the decease of my said wife that the said one fourth part of my estate, the income of which was bequeathed to her, go to my son William," etc. The testator further directs, that his executors shall, as soon as they conveniently can after his decease, " sell and dispose of all my personal and real estate to such person or persons, and for such price or prices as may reasonably be gotten for the same," conferring upon them at the same time the power to make deeds and conveyances for the said property when so•sold as directed.

Now the devise of the one fourth was of the whole estate, whether real or personal, for and during the widow's life, and, without more, she would have taken a life estate in the said one fourth of the land, and the remainder would pass at her death to William. On this, however, the plaintiff does not and cannot insist, for she refused to take under the will, and in consequence retained her statutory dower, which being merely a life estate was necessarily extinguished at her death, and could go over to no one.

How then this devise to Sarah Sullivan could by any possibility be and remain a charge on the testator's land, after she had renounced, is to us incomprehensible. But even had she not renounced, it is certain that the testator did not intend to charge this devise on the realty, and this because, had he so

Syllabus.

intended, he would not have imperatively directed his executors to convert his whole estate into money. There is no condition annexed to the direction to sell: "I do order and direct my executors hereafter named shall . . . . . sell and dispose of all my personal and real estate." Hence, it is clear that by the terms of the will there was a conversion; the whole estate became personalty, and as such the executors were bound to dispose of it. What, then, remains is this: when the executors sold to William A. Leiser, the grantor of the defendant, they, so far as the will and its devises were concerned, sold the unincumbered fee; but, as the widow had renounced, and retained her statutory dower, Leiser took subject to her life estate in the one third of the premises, which life estate expired at her death.

We have not adverted to the agreement between Dr. Marr and Leiser, for it in no wise concerns the issue. Marr agreed that the widow's dower should be deducted from the last payment coming to him, but that was a matter between themselves, with which the estate of Sullivan had nothing to do, and by which it could not be affected. On the other hand, the executors, Henderson and Candor, for the full consideration of six thousand three hundred and fifty dollars, by a deed in fee and without condition of any kind, conveyed, as by the will they were empowered to do, the land to Leiser.

The judgment is affirmed.